THE UNITED STATES DISTRICT COURT
STATE OF COLORADO

| | |
|---|---|
| AMGUARD INSURANCE COMPANY, as subrogee of 900 PENN LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>MARLEY ENGINEERED PRODUCTS and ROBERTSHAW CONTROLS COMPANY,<br><br>*Defendants*. | Case No.: 19-cv-900<br><br>JURY DEMAND |

## COMPLAINT

NOW COMES the Plaintiff, AMGUARD INSURANCE COMPANY, (hereinafter, "AmGuard"), as subrogee of 900 PENN LLC, (hereinafter, "900"), by and through its attorneys, Grotefeld, Hoffmann, Gordon, Ochoa & Evinger, LLP, and complains of Defendants MARLEY ENGINEERED PRODUCTS (hereinafter, "Marley") and ROBERTSHAW CONTROLS COMPANY (hereinafter, "Robertshaw"), and for its Complaint, states the following:

## PARTIES

1. At all times relevant, Plaintiff AmGuard was a Pennsylvania corporation with its principal place of business located in Wilkes-Barre and conducts business in the State of Colorado as an insurance company.

2. At all times relevant, 900 owned a property commonly referred to as 900 N. Pennsylvania Street, Denver, Colorado 80203 (hereinafter, "subject property").

3. At all times relevant and based on information and belief, Defendant Marley is a company who designs, manufactures, distributes and sells products under the QMark brand, as well as others.

4. At all times relevant and based on information and belief, Defendant Robertshaw is a company who designs, manufactures, distributes and sells products, including thermostats, under the Robertshaw brand, as well as others.

5. Defendant Marley's principle place of business is located at 470 Beauty Spot Road, East Bennettsville, South Carolina, and it was engaged in the business of developing, manufacturing, and distributing residential and commercial heating products, including, among other things, ceiling heaters. The ceiling heaters at issue were distributed and sold in Colorado.

6. Defendant Robertshaw's principle place of business is located at 1222 Hamilton Pkwy, Itasca, Illinois 60143, and Defendant Robertshaw was engaged in the business of developing, manufacturing, and distributing thermostats. The thermostat at issue was a component part included in a QMark ceiling heater distributed and sold in Colorado.

7. At all times relevant, AmGuard issued a policy of insurance to 900, which provided indemnification and reimbursement for property damage.

**JURISDICTION AND VENUE**

8. The Subject Matter Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1332 as Plaintiff AmGuard is a citizen of a different state than Defendants Marley and Robertshaw and the amount in controversy exceeds $75,000.

9. Personal Jurisdiction of this Court is proper because Defendants Marley and Robertshaw have sufficient minimum contacts in the State of Colorado.

10. Venue is proper in the United States District Court of Colorado, pursuant to 28 U.S.C. §1391(a)(1), because a substantial part of the events or omissions giving rise to the claim occurred in the district, and because a substantial part of property that is the subject of the action is situated within the district.

## FACTUAL ALLEGATIONS

11. Upon information and belief, at all relevant times, the subject property was being constructed as a multi-unit condominium residential property.

12. Upon information and belief, at all relevant times, the general contractor who conducted the construction was Sprung Construction.

13. Upon information and belief, prior to December 13, 2017 Sprung Construction retained the services of 1st Electric Contractors to install various ceiling heating units throughout the building.

14. Upon information and belief, 1st Electric Contractors purchased multiple QMark ceiling heaters, specifically Model # MUH0381 (hereinafter, "subject heater").

15. Upon information and belief, the subject heater was designed, manufactured, tested, sold and distributed by Defendant Marley.

16. Upon information and belief, the subject heater contained a thermostat as a temperature regulating component, which was designed, manufactured, tested and sold by Defendant Robertshaw.

17. Prior to December 13, 2017, the subject heater was installed by 1st Electric Contractors in the elevator shaft confined space to provide proper heating condition.

18. At all relevant times, 900 and Sprung Construction used the subject heater for its reasonably foreseeable and intended purpose.

19. On December 13, 2017, a water infiltration occurred in the confined space within the elevator shaft where the subject Heater was located (hereinafter, the "subject water infiltration").

20. The subject water infiltration caused damage to the subject property.

3

21. AmGuard's investigation revealed the subject water infiltration was the result of the activation of the fire suppression system within the subject property, specifically the activation of a sprinkler head in the area of the elevator shaft and subject heater.

22. Further investigation of the water infiltration revealed the sprinkler head activated due to excessive heat within the general proximity of the sprinkler head.

23. Upon information and belief, the heat, which activated the fire suppression system, was caused by the runaway operation of the QMark heater and failure of the Robertshaw thermostat to terminate the distribution of heat at the proper temperature settings.

24. Pursuant to the terms and conditions of the policy of insurance issued to 900, AmGuard has to date paid to, or on behalf of 900, an amount in excess of $415,000.00 for the damage caused by the subject water infiltration.

25. In consideration of payment by AmGuard to 900, and by operation of law, AmGuard became an actual, bona fide subrogee of 900 and became subrogated to all of the rights, claims and interests that 900 may have had against any person or entity that may be liable for causing the subject water infiltration and subsequent damages to the subject property.

## COUNT I: STRICT PRODUCT LIABILITY
### (Marley)

26. Plaintiff AmGuard repeats and re-alleges paragraphs 1 through 25 of this Complaint, as though fully set forth in this Count I.

27. Upon information and belief, the subject heater was defective and unreasonably dangerous when it left Defendant Marley's control and was placed into the stream of commerce.

28. Upon information and belief, the subject heater reached the subject property without substantial change in condition.

4

29. At all relevant times, the subject heater was used for its reasonably foreseeable and intended purpose.

30. When the subject heater left Defendant Marley's control and was placed into the stream of commerce, it was unreasonably dangerous and defective, in light of its foreseeable and intended use, in one or more of the following ways:

   a. The subject Heater contained one or more manufacturing defects inside its thermostat;

   b. The subject Heater contained one or more design defects related to the design of the thermostat and heat distribution system;

   c. The subject Heater was designed and manufactured in such a way so as to allow the unit to continue operating when heating should have been deactivated;

   d. The subject Heater was designed and manufactured in such a way so as to allow the Heater to reach improper operating temperatures;

   e. The subject Heater was designed and manufactured with a thermostat that was unreliable at terminating heat distribution when exposed to temperatures above its specified heat setting;

   f. The subject Heater failed to contain warnings to the user and/or consumer of the subject Heater regarding the subject Heaters ability to distribute heat above and beyond the heat seeing; and

   g. The subject Heater was otherwise defective.

31. On December 13, 2017, as a direct and proximate result of one or more of the foregoing defective and unreasonably dangerous conditions of the subject Heater, the subject Heater continued to distribute heat well in excess of the heat setting, causing the fire suppression system to activate and causing damage within the subject property in an amount in excess of $415,000.00.

WHEREFORE, AMGUARD INSURANCE COMPANY, as subrogee of 900 Penn LLC, respectfully requests judgment be entered in its favor and against MARLEY ENGINEERED

PRODUCTS in an amount in excess of $415,000.00 plus interest, costs, fees and other further relief this Court deems equitable and just.

## COUNT II: NEGLIGENCE
### (Marley)

32. Plaintiff AmGuard repeats and re-alleges paragraphs 1 through 25 of this Complaint, as though fully set forth in this Count II.

33. At all times relevant, Defendant Marley owed 900 a duty to exercise reasonable skill and care in testing, inspecting, distributing, and selling the subject Heater.

34. Notwithstanding said duty, Defendant Marley, by and through its agents and employees, breached its duty through one or more of the following acts or omissions:

   a. Failed to properly test the subject Heater, including the thermostat, before releasing the product into the stream of commerce;

   b. Failed to properly inspect the subject Heater, including the thermostat, before releasing the product into the stream of commerce;

   c. Failed to properly design the subject Heater, including the thermostat, before releasing the product into the stream of commerce;

   d. Failed to properly warn users and consumers the subject Heater was capable of failing and could provide heat in excess of heat setting; and

   e. Was otherwise careless and negligent in the manufacturing, design, testing, inspecting, distribution and/or sale of the subject Heater.

35. On December 13, 2017, as a direct and proximate result of the aforementioned negligent acts and omissions of Defendant Marley, the subject Heater continued to provide heat in access of its heat setting, causing the fire suppression system to activate and causing damage within the subject property in an amount in excess of $415,000.00.

WHEREFORE, AMGUARD INSURANCE COMPANY, as subrogee of 900 Penn LLC, respectfully requests judgment be entered in its favor and against MARLEY ENGINEERED

6

PRODUCTS in an amount in excess of $415,000.00 plus interest, costs, fees and other further relief this court deems equitable and just.

### COUNT III: STRICT PRODUCT LIABILITY
(Robertshaw)

36. Plaintiff AmGuard repeats and re-alleges paragraphs 1 through 25 of this Complaint, as though fully set forth in this Count III.

37. Upon information and belief, the thermostat installed within the subject heater was defective and unreasonably dangerous when it left Defendant Marley's control and was placed into the stream of commerce.

38. Upon information and belief, the subject thermostat reached the subject property without substantial change in condition.

39. At all relevant times, the subject thermostat was used for its reasonably foreseeable and intended purpose.

40. When the subject heater left Defendant Robertshaw's control and was placed into the stream of commerce, it was unreasonably dangerous and defective, in light of its foreseeable and intended use, in one or more of the following ways:

   a. The subject thermostat contained one or more manufacturing defect inside its thermostat;

   b. The subject thermostat contained one or more design defect related to the design in the temperature recognition system;

   c. The subject thermostat was designed and manufactured in such a way so as to not discontinue the operation of the unit when the heat setting was reached;

   d. The subject thermostat was designed and manufactured in such a way so as to allow it to not recognize the proper heat output;

   e. The subject thermostat was designed and manufactured with components that it did not properly recognize heat; and

      f. The subject thermostat was otherwise defective.

41. On December 13, 2017, as a direct and proximate result of one or more of the foregoing defective and unreasonably dangerous conditions of the subject thermostat, the subject heater continued to distribute heat well in excess of the heat setting, causing the fire suppression system to activate and causing damage within the subject property in an amount in excess of $415,000.00.

WHEREFORE, AMGUARD INSURANCE COMPANY, as subrogee of 900 Penn LLC, respectfully requests judgment be entered in its favor and against ROBERTSHAW CONTROLS COMPANY in an amount in excess of $415,000.00 plus interest, costs, fees and other further relief this Court deems equitable and just.

## COUNT IV: NEGLIGENCE
**(Robertshaw)**

42. Plaintiff AmGuard repeats and re-alleges paragraphs 1 through 25 of this Complaint, as though fully set forth in this Count IV.

43. At all times relevant, Defendant Marley owed 900 a duty to exercise reasonable skill and care in testing, inspecting, distributing, and selling the subject Heater.

44. Notwithstanding said duty, Defendant Marley, by and through its agents and employees, breached its duty through one or more of the following acts or omissions:

    a. Failed to properly test the thermostat, before releasing the product into the stream of commerce;

    b. Failed to properly inspect the thermostat, before releasing the product into the stream of commerce;

    c. Failed to properly design the thermostat, before releasing the product into the stream of commerce;

    d.  Failed to properly warn users and consumers the subject thermostat was capable of failing and may not recognize the proper temperatures; and

    e.  Was otherwise careless and negligent in the manufacturing, design, testing, inspecting, distribution and/or sale of the subject thermostat.

45.    On December 13, 2017, as a direct and proximate result of the aforementioned negligent acts and omissions of Defendant Robertshaw, the subject heater continued to provide heat in access of its heat setting, causing the fire suppression system to activate and causing damage within the subject property in an amount in excess of $415,000.00.

WHEREFORE, AMGUARD INSURANCE COMPANY, as subrogee of 900 Penn LLC, respectfully requests judgment be entered in its favor and against ROBERTSHAW CONTROLS COMPANY in an amount in excess of $415,000.00 plus interest, costs, fees and other further relief this court deems equitable and just.

Respectfully submitted,

AMGUARD INSURANCE COMPANY, as subrogee of 900 Penn, LLC

By:   */s/ Brad M. Gordon*

Brad M. Gordon (*Admitted on July 30, 2014*)
GROTEFELD, HOFFMANN, GORDON,
OCHOA & EVINGER, LLP
311 S. Wacker Dr., Ste. 1500
Chicago, IL 60606
Telephone: (312) 551-0200
Facsimile: (312) 601-2402
Email: bgordon@ghlaw-llp.com

9