IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-00900-CMA-STV

AMGUARD INSURANCE COMPANY, as subrogee of 900 PENN LLC,

    Plaintiff,

v.

MARLEY ENGINEERED PRODUCTS and
ROBERTSHAW CONTROLS COMPANY,

    Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART AMGUARD INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AGAINST ROBERTSHAW CONTROLS COMPANY**

This matter is before the Court on Plaintiff AmGuard Insurance Company's Motion for Summary Judgment Against Robertshaw Controls Company (Doc. # 67). For the following reasons, the Motion is granted in part and denied in part.

### I.    BACKGROUND

This is a product-liability case. Plaintiff, AmGuard Insurance Company, insured the property located at 900 N. Pennsylvania Street in Denver (the "Property"). (Doc. # 30, ¶¶ 24-25). In 2017, the Property suffered water damage when the building's fire-suppression system activated unexpectedly, triggering the building's interior sprinkler system. (Doc. # 30, ¶¶ 21-24). The owners filed an insurance claim with AmGuard, which paid to fix the damage. (Doc. # 30, ¶ 24).

1

AmGuard claims that the damage resulted from a malfunction of the building's heating system. (Doc. # 30, ¶ 23). It alleges that one of the building's heaters went into "runaway operation" after its thermostat failed, causing the heater to generate excessive heat, which in turn activated the fire-suppression system. (Doc. # 67, ¶¶ 2-3). AmGuard is suing the manufacturer of the heater, Marley Engineered Products, as well as the manufacturer of the thermostat, Robertshaw Controls Company. (Doc. # 30). AmGuard asserts claims for strict product liability and negligence against both Defendants. (Doc. # 30).

AmGuard now seeks summary judgment on its strict-product-liability claim against Robertshaw. (Doc. # 67). It contends that there can be no genuine dispute that the heater's runaway operation was caused by a manufacturing defect in the thermostat, and that it is therefore entitled to a judgment as a matter of law. (Doc. # 67). AmGuard also seeks summary judgment with respect to two of Robertshaw's affirmative defenses: nonparty fault and unforeseeable misuse. (Doc. # 67). Finally, AmGuard seeks summary judgment as to the amount of damages. (Doc. # 67).

As explained in more detail below, the Court agrees that AmGuard is entitled to summary judgment on its strict-product-liability claim against Robertshaw. The Court also agrees that AmGuard is entitled to summary judgment as to two of Robertshaw's affirmative defenses. The Court disagrees, however, that AmGuard is entitled to summary judgment against Robertshaw as to the full amount of its claimed damages.

## II.      LEGAL STANDARDS

To succeed on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine dispute of material fact; and (2) the movant is entitled to judgment as a matter of law. F.R.C.P. 56(a). Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings at this stage; rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

The moving party need not affirmatively negate the nonmovant's claim to obtain summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Instead, the movant only bears the initial burden of "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." *Id.* at 249.

### III.   ANALYSIS

**A.   STRICT PRODUCT LIABILITY – MANUFACTURING DEFECT**

AmGuard first argues that it is entitled to summary judgment on its strict-product-liability claim against Robertshaw. The Court agrees.

To succeed on a claim for strict product liability in Colorado, the plaintiff must prove that (1) the defendant manufactured the product; (2) the product was defective and, because of the defect, was unreasonably dangerous to a person who might reasonably be expected to use it; (3) the product was defective at the time the manufacturer sold it; (4) the product was expected to, and did, reach the user without substantial change; and (5) the plaintiff was a person reasonably expected to use the product, was injured, and the product's defect caused plaintiff's injuries. *Wollam v. Wright Med. Grp., Inc.*, No. 1:10-CV-3104-DME, 2012 WL 4510695, at *2 (D. Colo. Sept. 30, 2012); *see also* Colo. Jury Instr., Civ. 14:1. This dispute centers on element two: defectiveness.

AmGuard claims that the Robertshaw thermostat was defective because it "was designed to be completely filled with ethylene glycol," but the thermostat in question "was found to have an incomplete fill of fluid." (Doc. # 67, pp. 4, 10-11). This lack of fluid, AmGuard argues, prevented it from signaling an accurate air temperature to the heater, causing the heater to operate "indefinitely." (Doc. # 67, ¶ 15 (internal quotation omitted)).

Robertshaw disputes AmGuard's claims of defectiveness, but AmGuard argues that the dispute is not genuine. AmGuard points out that both AmGuard's and Marley's

4

experts opine that the Robertshaw thermostat was defective and that such defect caused the runaway operation of the heater. (*See* Doc. # 67, ¶¶ 12-15). Further, Robertshaw's own expert, Robertshaw's Director of Risk Engineering, Stefan Szewczyk (Doc. # 79, p. 8), admitted at deposition that the thermostat had not been manufactured as designed. (Doc. # 67, ¶¶ 16-19; Doc. # 67-1, pp. 148-49). Szewczyk also testified that the lack of fluid in the thermostat caused the runaway operation of the heater in question, (Doc. # 67-1, p. 158), which in turn caused the sprinkler system to activate (Doc. # 67-1, p. 173). Although Robertshaw withdrew its expert endorsement following Szewczyk's deposition, it has not designated any other expert to testify as to whether the thermostat was defectively manufactured. These facts, taken together, are sufficient to shift the burden Robertshaw to "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Robertshaw has failed to do so.

Although Robertshaw argues that the opinions of AmGuard's and Marley's experts are "conclusory," (Doc. # 82, p. 7), it offers no evidence or explanation to support this argument. Robertshaw has withdrawn its only expert witness, and it has not endorsed any other expert to testify on the issue of defectiveness. Further, Robertshaw has not provided the Court with any other evidence or testimony from which a jury could find in its favor on AmGuard's strict-liability claim. Therefore, the Court concludes that there is no genuine dispute of material fact on this issue and that AmGuard is entitled to summary judgment on this claim.

### B. AFFIRMATIVE DEFENSES

AmGuard next contends that it is entitled to summary judgment on two of Robertshaw's affirmative defenses: Defense two, which asserts that a nonparty to this lawsuit, 1st Electric Contractors, may bear responsibility for Plaintiff's damages; and defense four, which asserts that Plaintiff's damages "may be barred by unforeseeable misuse of the product." (Doc. # 31, p. 7). The Court agrees.

AmGuard has met its burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case" with respect to these two affirmative defenses. *Celotex Corp.*, 477 U.S. at 325. As discussed above, AmGuard has offered evidence to support its claim that the Robertshaw thermostat was defectively manufactured. AmGuard has also pointed out a lack of evidence from Robertshaw to suggest that either 1st Electric Contractors or the Property owners bear responsibility for the water damage that gave rise to this case. Thus, the burden shifted to Robertshaw to offer evidence that would support a jury finding in its favor on these two defenses. It has failed to do so, and AmGuard is therefore entitled to summary judgment as to those two defenses.

### C. DAMAGES

Finally, AmGuard argues that it is entitled to summary judgment against Robertshaw as to the full amount of its claimed damages. The Court disagrees. Though there appears to be no dispute as to the amount AmGuard paid to the Property owners, AmGuard has failed to establish that Robertshaw alone is responsible for those damages. AmGuard continues to pursue claims against Marley, alleging that Marley is

at least partly responsible for AmGuard's damages.[1] The Court therefore cannot grant summary judgment on the issue of damages.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff AmGuard Insurance Company's Motion for Summary Judgment Against Robertshaw Controls Company (Doc. # 67) is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED to the extent it seeks summary judgment in favor of AmGuard and against Robertshaw on AmGuard's third claim for relief – strict product liability against Robertshaw – and on Robertshaw's second and fourth affirmative defense. The Motion is DENIED in all other respects.

DATED:  February 7, 2022

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge

---

[1] Colorado has eliminated joint and several liability in most product liability cases. *See* Colo. Rev. Stat. § 13-21-406 ("In any product liability action, the fault of the person suffering the harm, as well as the fault of all others who are parties to the action for causing the harm, shall be compared by the trier of fact in accordance with this section."); *see also* Colo. Rev. Stat. § 13-21-401(2) ("'Product liability action' means any action brought against a manufacturer or seller of a product, regardless of the substantive legal theory or theories upon which the action is brought"). Federal courts applying this comparative-fault scheme have concluded that negligence attributable to a plaintiff or to another defendant is properly treated as comparative fault that reduces damages in a strict liability action. *See, e.g. Carter v. United Rig & Equip. Co.*, 908 F. 2d 483, 487 (1990). Therefore, Robertshaw can only be liable for the proportion of fault attributed to it. Because AmGuard has not yet established that only Robertshaw is responsible for its damages fault, the Court cannot award the entire amount of AmGuard's damages against Robertshaw.